**Ramos v Deutsche Bank Sec., Inc.**

2026 NY Slip Op 30891(U)

March 12, 2026

Supreme Court, New York County

Docket Number: Index No. 154234/2025

Judge: Paul A. Goetz

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:  **HON. PAUL A. GOETZ**                    PART                    47
                                            *Justice*

-----------------------------------------------------------------------------X

NOAH RAMOS,                                    INDEX NO.          154234/2025

                    Plaintiff,                 MOTION DATE     05/19/2025, 08/22/2025

            - v -                              MOTION SEQ. NO.      001 002

DEUTSCHE BANK SECURITIES, INC, DB USA
CORPORATION, DEUTSCHE BANK AG, BIMAL PEIRIS     **DECISION + ORDER ON
                                                MOTION**
                    Defendants.

-----------------------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 001) 3, 4, 5, 6, 7, 8, 9, 10, 11, 23, 25, 27

were read on this motion to/for                    DISMISS                    .

The following e-filed documents, listed by NYSCEF document number (Motion 002) 13, 14, 15, 16, 17, 19, 20, 21, 22, 24, 26, 28

were read on this motion to/for                    DISMISS                    .

In this whistleblower retaliation action, defendants, Deutsche Bank Securities, Inc., DB

USA Corporation and Deutsche Bank AG (collectively "Deutsche Bank"), move, pursuant to

CPLR § 3211(a)(7) to dismiss the complaint as asserted against them (MS #1). Defendant, Bimal

Peiris, separately moves, pursuant to CPLR § 3211(a)(7) to dismiss the complaint as asserted

against him (MS #2). Plaintiff asserts four causes of action against all defendants for: (1) & (2)

Violations of New York State Labor Law § 740 (Whistleblower Retaliation);[1] (3) Defamation

(Libel); and (4) Intentional Infliction of Emotional Distress ("IIED").

---

[1] Plaintiff's first Labor Law § 740 cause of action is based on plaintiff's termination for plaintiff's protected "whistleblower" activities while plaintiff's second Labor Law § 740 cause of action is based on the alleged false and defamatory marking of plaintiff's U-5 form.

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**                    Page 1 of 13
**Motion No.  001 002**

1 of 13

## BACKGROUND

Plaintiff, has worked in the securities industry since 2006, and is a "registered person" under the rules and regulations of Financial Industry Regulatory Authority ("FINRA") (NYSCEF Doc No 1 ¶ 22). In June 2020, plaintiff was hired by Deutsche Bank to work as Deutsche Bank's Head of Brokerage Operations for the Americas (*id*. at ¶ 23). Plaintiff was promoted to Deutsche Bank's Head of Operations for the Americas in September 2022 (*id*. at ¶ 25). Part of plaintiff's duties in this position was to head operations for Deutsche Bank's lending business (*id*. at ¶ 33). Defendant, Peiris was the Chief Operating Officer of Deutsche Bank's lending business (*id*. at ¶ 34).

Plaintiff alleges that upon assuming these duties, he discovered that Deutsche Bank's lending business suffered from a lack of operational controls and general negligence (*id*. at ¶ 35). Plaintiff alleges that in November 2023 he discovered that because of these issues, Deutsche Bank's lending business had improperly accrued $173 million, due to, among other things, amounts due on loans not being paid and Deutsche Bank holding cash receivable items "in suspense"[2], which ultimately resulted in Deutsche Bank losing $29.5 million in its lending business (NYSCEF Doc No 1 ¶¶ 36-37). Plaintiff alleges that he reported his discovery to his superiors at Deutsche Bank, however defendant Peiris was dismissive of his discovery, and Peiris and other Deutsche Bank executives ignored his recommendation that Deutsche Bank must self-report the findings to avoid being fined (*id*. at ¶¶ 39-43).

Plaintiff alleges that instead of self-reporting the findings, Deutsche Bank executives falsely reported that the improper accrual was due to "accounting errors" (*id*. at ¶¶ 45-47).

---

[2] Suspense Accounts act as temporary holding places, where security positions and money balances whose ultimate disposition is not known can be held until they can be properly classified (*see* FINRA Rule 4523; *see also* SEA Rule 15c3-1, NET CAPITAL REQUIREMENTS FOR BROKERS OR DEALERS, at p 251, https://www.finra.org/sites/default/files/SEA.Rule_.15c3-1.Interpretations.pdf).

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**
**Motion No.  001 002**

[* 2]

Plaintiff alleges that his advocacy that Deutsche Bank self-report the actual cause of the improper accumulations caused significant tension between plaintiff and his supervisors at Deutsche Bank, leading plaintiff to feel that his job was in jeopardy (*id*. ¶¶ 49-51). Plaintiff further alleges that when he was called upon to help prepare a defense in a Florida litigation related to Deutsche Bank's alleged participation in a Ponzi scheme, he discovered that the claims against Deutsche Bank there were another manifestation of its alleged failure to institute operational controls (*id*. at ¶¶ 52-56). A $95 million dollar judgment was imposed against Deutsche Bank in the Florida litigation and plaintiff alleges that he again approached his Deutsche Bank supervisors and proposed that Deutsche Bank institute several Federal Reserve and SEC mandated operational controls related to the transfer of securities in client accounts and the segregation of assets with client accounts (*id*. at ¶¶ 57-58). Plaintiff alleges that his supervisors rejected his suggestions, leading him to believe his employment was in further jeopardy for not supporting Deutsche Bank's alleged strategy to ignore Federal Reserve and SEC regulations (NYSCEF Doc No 1 ¶ 59).

Plaintiff alleges that defendants then conspired to create a "pretext" to justify plaintiff's termination (*id*. ¶ 61). Plaintiff alleges that a fellow Deutsche Bank employee, the daughter of a high-ranking executive at UBS Bank, who had personal relationship with Deutsche Bank executives, filed an HR complaint against him, alleging that plaintiff made insensitive, anti-Asian comments about a Christmas gift wrapped in Hello Kitty[3] wrapping paper (NYSCEF Doc No 1 ¶¶ 62, 66). Plaintiff alleges that the employee who brought the HR complaint was not Asian, but alleged that plaintiff's comments were said in front of an Asian employee (*id*. at ¶ 65).

---

[3] Hello Kitty is a cartoon character created in Japan (NYSCEF Doc No 1 ¶ 63).

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**               **Page 3 of 13**
**Motion No.  001 002**

3 of 13

Following an investigation into the statement, plaintiff was terminated on March 27, 2024 "for cause" alleging that he had engaged in anti-Asian bias (*id*. at ¶¶ 69-71).

Whenever a registered financial professional is terminated, their employer must publish a reason for the termination on a document known as a Uniform Termination Notice for Securities Industry Registration, or as it is more commonly known, a Form U-5, which is maintained by FINRA (*id*. at ¶¶ 73-74). Plaintiff alleges that after he informed Deutsche Bank that he would be pursuing a whistleblower retaliation claim, Deutsche Bank marked his Form U-5 stating he was terminated for a "Violation of EEO Policy" (*id*. at ¶ 79). Plaintiff alleges that Deutsche Bank marked his Form U-5, knowing that the reason for termination was false, in an effort to damage his employment opportunities within the financial services sector (*id*. at ¶¶ 80-81).

## DISCUSSION

### I.     *Failure to State a Cause of Action*

When reviewing a "motion to dismiss for failure to state a cause of action pursuant to CPLR 3211(a)(7), [courts] must accept the facts as alleged in the complaint as true, accord the plaintiff the benefit of every reasonable inference, and determine only whether the facts, as alleged fit within any cognizable legal theory" (*Bangladesh Bank v Rizal Commercial Banking Corp.*, 226 AD3d 60, 85-86 [1st Dept 2024] [internal quotations omitted]). "In making this determination, [a court is] not authorized to assess the merits of the complaint or any of its factual allegations" (*id*. at 86 [internal quotations omitted]).  "Dismissal of the complaint is warranted if the plaintiff fails to assert facts in support of an element of the claim, or if the factual allegations and inferences to be drawn from them do not allow for an enforceable right of recovery" (*Connaughton v Chipotle Mexican Grill, Inc*., 29 NY3d 137, 142 [2017]).

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**               **Page 4 of 13**
**Motion No.  001 002**

4 of 13

a. *Labor Law § 740*

Labor Law § 740 provides that:

> An employer shall not take any retaliatory action against an employee, whether or not within the scope of the employee's job duties, because such employee does any of the following
>
> (a) discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation or that the employee reasonably believes poses a substantial and specific danger to the public health or safety;
> (b) provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any such activity, policy or practice by such employer; or
> (c) objects to, or refuses to participate in any such activity, policy or practice.

Deutsche Bank defendants argue, and Peiris adopts the argument, that plaintiff has failed to adequately plead a cause of action under Labor Law § 740 because he does not allege that he engaged in protected activity, or alternatively that even if he did engage in protected activity, that plaintiff has failed to adequately allege the activity resulted in Deutsche Bank terminating his employment or filing the Form U5.

i. *Protected Activity*

Defendants argue that plaintiff has failed to plead that he engaged in protected activity because the complaint only alleges generalized internal complaints about Deutsche Bank's negligence and lack of internal controls, and does not specifically plead what laws or regulations plaintiff believed Deutsche Bank may have violated, and that he did not plead what measures he believes should have been in place.

"[F]or pleading purposes, the complaint need not specify the actual law, rule or regulation violated, although it must identify the particular activities, policies or practices in

154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL          Page 5 of 13
Motion No.  001 002

5 of 13

which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct" (*Webb-Weber v Community Action for Human Services, Inc.*, 23 NY3d 448, 453 [2014]). Here, while plaintiff does not cite any specific regulations that he believes Deutsche Bank violated, he does plead that Deutsche Bank improperly accumulated vast sums of money in part due to "cash receivable items being held in suspense and amounts due on various loans not being paid" (NYSCEF Doc No 1 ¶ 37). Plaintiff further alleges that to conceal these improprieties, Deutsche Bank executives lied to the Federal Reserve regulators conducting an audit (*id*. at ¶¶ 44-50).

Affording plaintiff's complaint a liberal construction and affording plaintiff's allegations every favorable inference, as required on a CPLR § 3211(a)(7), motion to dismiss, the complaint is sufficient to state a cause of action under Labor Law § 740 (*see Gruessner v State*, 232 AD3d 743 [2d Dept 2024] [Labor Law § 740 claim sufficiently plead when plaintiff alleges policies in violation of regulations, which were investigated by governmental agencies]). The complaint provides Deutsche Bank with notice of the alleged complained of conduct, improper accumulation of funds, failure to self-report the reasons behind the accumulation, and lying to federal investigators, and "[m]oreover, defendants can request in a bill of particulars that plaintiff identify the particular laws, rules and regulations allegedly violated" (*Webb-Weber*, 23 NY3d at 454).

### ii.  Retaliatory Action

Defendants also argue that plaintiff has failed to plead a causal connection between his alleged internal complaints and Deutsche Bank's alleged retaliatory action against him. Deutsche Bank argues that because plaintiff's alleged reporting about Deutsche Bank improprieties to his supervisors occurred in November and December of 2023, and his termination did not occur

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**                 **Page 6 of 13**
**Motion No.  001 002**

6 of 13

[* 6]

until March 27, 2024, that plaintiff has failed to plead that there was a causal link between the two events.

In the context of Title VII and New York State Huiman Rights Law causes of action, "[t]he passage of even two or three months is sufficient to negate any inference of causation *when no other basis to infer retaliation is alleged*" (*Brown v City of New York*, 622 Fed Appx 19, 20 [2d Cir 2015] [emphasis provided]). Defendants argue that the temporal proximity between the events is too great to imply causation, and therefore, plaintiff must present "direct evidence of retaliatory animus" (*see Pardo v Tomas Infernuso DVM, P.C.*, 24-CV-00190 (NCM) (ST), 2024 WL 4276204 [EDNY 2024]). However, plaintiff alleges that defendants concocted a scheme to justify his termination starting in January 2024, only a month after his alleged complaints about Deutsche Bank's lack of operational controls. Given the liberal construction courts must give the complaint at this juncture, the facts alleged by plaintiff sufficiently plead a causal link between the alleged protected activity and the alleged retaliatory action to survive defendants' pre-answer motion to dismiss.

b. *Form U5 Absolute Privilege*

Defendants argue that both plaintiff's defamation claim, and his second Labor Law § 740 retaliation claim must be dismissed because New York courts recognize an absolute privilege for Form U5 disclosures rendering Deutsche Bank immune from liability based upon the contents of plaintiff's Form U5.

i. *Defamation*

In *Rosenberg v Metlife, Inc*, the Court of Appeals held that "statements made by an employer on [Form U5] should be subject to an absolute privilege" (*Rosenberg v MetLife, Inc.*, 8 NY3d 359, 368 [2007]). The Court noted that an "absolute privilege generally is reserved for

154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL
Motion No.  001 002

Page 7 of 13

communications made by individuals participating in a public function, such as executive, legislative, judicial or quasi-judicial proceedings" (*id*. at 365). Further, the "privilege can extend to preliminary or investigative stages of the process, particularly where compelling public interests are at stake" (*id*.). The Court noted that because the National Association of Securities Dealers ("NASD") mandates that an employer must file of Form U5 within 30 days of termination of a registered employee, and considering that the form "is often the first indication that the NASD receives regarding possible misconduct by members of the securities industry, and investigations of misconduct reported on the Form U-5 frequently lead to the initiation of disciplinary action by the NASD" (*id*. at 367), that the filing of the form can be viewed as "a preliminary or first step in the NASD's quasi-judicial process" (*id*.). Additionally, there is a significant public interest in encouraging the filing of Form U5s because such information serves the investing public to insulate itself from harm caused by unethical brokers (*id*. at 368).

Considering the aforementioned factors, and that registered employees who are defamed on a Form U5 are not completely without remedy, in that they "may commence an arbitration hearing to expunge defamatory language, … [s]tatements made by an employer on a NASD employee termination notice are subject to an absolute privilege in a suit for defamation" (*id*.). Plaintiff does not dispute the holding in *Rosenberg*, however he notes that two justices dissented in that decision, and that 46 other states have rejected the concept of an absolute privilege for statements made on a Form U5, and instead give employers a *qualified* immunity, meaning that a defamation claim may only proceed if the defamatory statements were made with actual malice" (*see Preston v Fid. Brokerage Services*, 20-1612, 2022 WL 964001 [3d Cir 2022]). Plaintiff argues that the reasoning behind the *Rosenberg* decision has not stood the test of time, in that the absolute privilege afforded to employers has counterintuitively resulted in increased broker

154234/2025  RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL
Motion No.  001 002

Page 8 of 13

8 of 13

wrongdoing, since a potential whistleblower will be hesitant to report any misconduct out of a fear that his employer will forever mar his record, damaging future career prospects.

Plaintiff further argues that *Rosenberg* should not be followed given the legislature's recent amendments to Labor Law § 740 affording whistleblowers enhanced protection. While, shifting public policy evinced by legislative action[4] may support not applying prior decisions and plaintiff raises legitimate concerns about the effects the *Rosenberg* decision has on potential whistleblowers, "[t]he doctrine of stare decisis provides that once a court has decided a legal issue, subsequent [cases] presenting similar facts should be decided in conformity with the earlier decision" (*People v Bing*, 76 NY2d 331, 337-38 [1990]). "Its purpose is to promote efficiency and provide guidance and consistency in future cases by recognizing that legal questions, once settled, should not be reexamined every time they are presented" (*id.* at 338). Consequently, prior decisions will only be overruled in the rarest of cases (*Flanders v Goodfellow*, 44 NY3d 57, 67 [2025] [internal quotation marks omitted]).

Since plaintiff has failed to distinguish the facts alleged in the complaint from those in *Rosenberg*, this court remains bound by that decision. Plaintiff is free to ask the appellate courts to determine if *Rosenberg* should be overturned and therefore not subject the statements in the Form U5 to an absolute privilege. Until such a decision this court is bound by *Rosenberg* and the Form U5 statements are entitled to absolute privilege. Accordingly, plaintiff's third cause of action for defamation will be dismissed.

---

[4] "In cases where statutory precedents have been overruled, the primary reason for the Court's shift in position has been the intervening development of the law, through either the growth of judicial doctrine or further action taken by Congress. Where such changes have removed or weakened the conceptual underpinnings from the prior decision, or where the later law has rendered the decision irreconcilable with competing legal doctrines or policies the Court has not hesitated to overrule an earlier decision" (*Patterson v McLean Credit Union*, 491 US 164, 173, 109 S Ct 2363, 2370, 105 L Ed 2d 132 [1989]).

[* 9]

*ii.    Labor Law § 740 as predicated upon Form U5*

Defendants also argue that plaintiff's second Labor Law § 740 cause of action, grounded on the "marking" of his Form U5 as the retaliatory action allegedly suffered by plaintiff, should also be dismissed on the grounds that absolute immunity is afforded to defendants based on statements made in a Form U5. Plaintiff tacitly concedes that the statements that defendants made on his Form U5 are subject to absolute immunity. However, plaintiff argues that the "marking" itself of the Form U5 is a retaliatory action. Plaintiff further argues that if he was not fired for engaging in protected activity, he would have a "clean" Form U5, and thus, plaintiff has suffered an injury due to the effect an unclean Form U5 has on a registered person working in the securities industry. Therefore, plaintiff argues that the retaliation for his second cause of action, is not based upon the content of defendants' statements within the Form U5, but rather on the fact that it was marked at all.

However, as noted in *Rosenberg*, an employer of a registered person must file a Form U5 once they terminate a registered person. Therefore, the marking of the Form U5 and the termination of the employee are inextricably linked and should not have been asserted as separate causes of action (*Jericho Water Dist. v S. Zara & Sons Contr. Co., Inc.*, 116 AD2d 622 [2d Dept 1986]). Accordingly, the second cause of action, for a violation of New York State Labor Law § 740 will be dismissed.

*c.  IIED*

Defendants argue that plaintiff's IIED cause of action must be dismissed because the allegations do not rise to the level of extreme and outrageous conduct behavior sufficient to support an IIED claim. To establish a claim for IIED, the following four elements must be alleged: (1) extreme and outrageous conduct; (2) intent to cause, or disregard of a substantial

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**
**Motion No.  001 002**

**Page 10 of 13**

[* 10]

probability of causing, severe emotional distress; (3) a causal connection between the conduct and injury; and (4) severe emotional distress (*Howell v New York Post Co., Inc.*, 81 NY2d 115, 121 [1993]). "A cause of action for [IIED] must allege conduct that is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" (*164 Mulberry St. Corp. v Columbia Univ.*, 4 AD3d 49, 56 [1st Dept 2004]).

In an at will employment situation, termination of employment "may not form the basis of an intentional infliction of emotional distress cause of action" as it fails to rise to the level of extremity and outrageousness to support this claim (*Bailey v New York Westchester Sq. Med. Ctr.*, 38 AD3d 119, 125 [1st Dept 2007]). Further, it is axiomatic that "no IIED claim lies when the offensive conduct is embraced by a traditional tort," and therefore the allegedly outrageous conduct cannot be based upon the same conduct as the defamation cause of action[5] (*Brown v Riverside Church in City of New York*, 231 AD3d 104, 110 [1st Dept 2024]). Accordingly plaintiff's fourth cause of action for IIED must be dismissed.

> d. *Liability against Peiris*

Defendant, Peiris argues that he cannot be held liable for the remaining Labor Law § 740 cause of action, because plaintiff has failed to adequately allege that Peiris is his employer. Peiris also argues that plaintiff has failed to allege facts that he personally was involved in plaintiff's termination.

Labor Law § 740(1)(b) defines an employer as "any person, firm, partnership, institution, corporation, or association that employs one or more employees." To determine whether an individual is an employer under Labor Law § 74, courts apply the "economic reality" test (*Senal*

---

[5] Since the defamatory words were within the Form U5, even if this conduct rose to a sufficient level of outrageousness, the conduct would be subject to the absolute privilege afforded to employers filing Form U5s.

**154234/2025  RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**         Page 11 of 13
**Motion No.  001 002**

*v Lynch*, 217 AD3d 466 [1st Dept 2023]). "Under the 'economic reality' test, the relevant factors include 'whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records'" (*Matter of Carver v State*, 26 NY3d 272, 279 [2015]).

Plaintiff alleges that he was appointed to head Deutsche Bank's lending business while Peiris was the Chief Operating Officer of the lending business. The complaint further alleges that plaintiff reported his findings of alleged improprieties to Peiris, who dismissed them. Considering Peiris' title, and that the complaint alleges that Peiris was responsible for signing off and implementing any processes, which plaintiff alleges could have avoided further violation of regulation, at this pre-answer juncture plaintiff has sufficiently alleged that Peiris was his employer.

Further, accepting the allegations in the complaint as true, plaintiff has sufficiently alleged facts that Peiris was involved in the alleged scheme to hide allege Deutsche Bank misappropriations, lie to federal investigators, and to ultimately terminate plaintiff because of his unwillingness to comply with the alleged scheme. While Peiris disputes these factual allegations at this juncture, plaintiff has sufficiently stated a claim against both Deutsche Bank and Peiris and the first cause of action for a violation of New York State Labor Law § 740 will not be dismissed as against Peiris.

Accordingly, it is,

ORDERED that the portions of Deutsche Bank's (MS #1) and Peiris' (MS #2) motions to dismiss the first cause of action are denied; and it is further

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**
**Motion No.  001 002**

**Page 12 of 13**

12 of 13

ORDERED that the portions of Deutsche Bank's (MS #1) and Peiris' (MS #2) motions to dismiss the second, third, and fourth causes of action are granted; and it is further

ORDERED that the defendants are directed to file an answer to the complaint within 21 days of this order.

20260312151916PGOETZD8B4FDCC08B845E7BA0202A4780D2DA6

| | |
|---|---|
| **3/12/2026** | **PAUL A. GOETZ, J.S.C.** |
| **DATE** | |

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**154234/2025   RAMOS, NOAH vs. DEUTSCHE BANK SECURITIES, INC ET AL**
**Motion No.  001 002**

Page 13 of 13